**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HEATHER ROBBINS,<br><br>        Plaintiff,<br><br>    v.<br><br>PLAYHOUSE LOUNGE,<br><br>        Defendant. | Civil Action No.:<br>1:19-cv-08387-NLH-KMW |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

## I.    INTRODUCTION

Plaintiff has filed the instant action for unpaid wages, wrongful termination, and sexual harassment under the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII "), the New Jersey Wage Payment and Collection Law ("NJWPCL"), the New Jersey Wage and Hour Law ("NJWHL"), the New Jersey Law Against Discrimination ("NJLAD"), and the New Jersey Conscientious Employee Protection Act ("CEPA"). The gravamen of Plaintiff's claims are essentially two-fold: first, Defendant misclassified Plaintiff as an independent contractor instead of an employee, and deprived her of the statutory benefits of employment, not least the right to receive minimum wage and overtime pay under FLSA and the NJWHL, and the right to not have deductions be made from pay under the NJWPCL. The second component of Plaintiffs' claims is that while working for Defendant, Defendant attempted to solicit her to engage in acts of prostitution for Defendants' customers, and that her employment with Defendant terminated as a result of such entreaties and Plaintiff's rejections of same.

Defendant has now refiled its motion to compel arbitration, arguing that Plaintiff signed a contract with it in which she agreed to be classified as an independent contractor and in which she

1

agreed to arbitrate any disputes which arose pursuant to the contract. That arbitration provision did not specify which arbitration service would be used, provided that Defendant would be allowed to consent to the identity of the arbitrator, and provided that Defendant could insist on an arbitrator with experience in the adult entertainment industry, and that Plaintiff would be required to share equally the cost of the arbitrator unless the arbitrator determined otherwise. The provision further provides that Plaintiff is responsible for the costs and attorneys' fees of challenging the validity of the arbitration agreement. Finally, the arbitration provision attempts to require Plaintiff to pay the attorneys fees of Defendants if she is not the prevailing party as to her substantive claims. *See* ECF Doc. No. 38-2 at 11-12, Para. 21.

These provisions render the arbitration agreement substantively unconscionable and unenforceable. And because these provisions directly impact the conscionability of both (a) the broader arbitration provision requiring Plaintiff to arbitrate her substantive claims; and (b) the narrow delegation clause in which Plaintiff is required to submit the question of the enforceability of the arbitration clause to the arbitrator, it is for the Court to determine whether a valid arbitration agreement exists based on unconscionability.

Likewise, Plaintiffs advance an important second challenge to the valid formation of the arbitration agreement—namely, that the purpose of the larger contract is to promote and conceal prostitution, and that therefore, the entire contract is void *ab initio.* The Third Circuit recently held that where a contract is challenged on formation grounds such that the agreements contained therein are void *ab initio,* the Court determines whether a valid or void contract exists, regardless of whether the allegedly illegal contract attempted to delegate such determinations to an arbitrator. *See MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 400 (3d Cir. 2020)

The Court should also deny Defendant's motion because Defendant has waived arbitration by failing to timely refile its motion for arbitration and by acting inconsistently with a desire to arbitrate. Magistrate Judge Williams denied Plaintiff's motion for arbitration related discovery without prejudice in January 2020. Defendant took no effort to compel arbitration in that time, either through a motion or through conferral with Plaintiff. Defendant has not proposed an arbitration service, like AAA, nor has it proposed a list of potentially neutral arbitrators. The arbitration agreement itself provides no guidance for how an arbitrator will be selected—but it does not allow each party to withhold consent. Given these issues, Defendant's mere refiling of a motion to compel arbitration *within* hours of a status conference Magistrate Judge Williams initiated does not demonstrate that Defendant actually wishes to litigate these matters before an arbitrator as opposed to simply continue to delay the case. Accordingly, the Court should further find that Defendant has acted inconsistently with a desire to try these cases before an arbitrator and has therefore waived arbitration.

In the alternative, Plaintiff renews her request for 90 days of discovery including up to 10 interrogatories, up to 10 requests for admission, 10 requests for production, up to 4 depositions, including one deposition of a corporate designee of Defendant pursuant to Fed. R. Civ. P. 30(b)(6), and an unlimited number of third-party subpoenas for documents. In turn, Plaintiff proposes answering up to 10 interrogatories, up to 10 requests for admission, 10 requests for production, and sitting for a limited deposition. Plaintiff also requests that the scope of discovery be limited to (a) prostitution activities on Defendant's premises; and (b) the work contracts used by Defendant and the formation of the particular work contract at issue containing the arbitration and arbitrability-delegation provisions.

Plaintiff seeks arbitration-related discovery whether Defendant operated its business as a house of prostitution, and therefore, the arbitration agreement signed by Plaintiff is void for illegality of purpose. Third Circuit has provided that when a party presents reliable evidence that places the agreement at issue, the court should allow discovery on the validity of the arbitration agreement and then decide the issue under a summary judgment standard; if, after a summary judgment review, disputes of fact remain, arbitrability should then be decided via summary trial. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-76, 780 (3d Cir. 2013).

Attached to this motion are widespread reports that Defendant Playhouse Lounge promoted or condoned prostitution on its premises. Though they constitute out-of-court statements, these reviews and reports are likely admissible as declarations against interest. Regardless of their admissibility, however, the reviews certainly provide a colorable basis for permitting discovery into Plaintiff's allegations that Defendant promoted and encouraged exotic dancers like herself to engage in prostitution, which impacts whether the agreement to arbitrate (and the agreement to arbitrate arbitrability) are illegal contracts void under New Jersey law.

Finally, if the Court does not deny Defendant's motion to compel arbitration, it should nevertheless hold that Defendant must pay for the costs of arbitration, that Defendant cannot recover attorneys' fees related to its motion to compel arbitration, and that Defendant cannot recover attorneys fees if it turns out to be the prevailing party in Plaintiffs' underlying statutory claims of violations of the Fair Labor Standards Act and New Jersey statutory law.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed her lawsuit on March 12, 2019. ECF Doc. No. 1. On March 25, 2019, the Courier Post, a local newspaper, published an online article on the lawsuit, to which Defendant gave the following statement: "We adamantly deny the allegations and look forward to litigating

this matter in court. We will zealously defend this case." *See* "Former dancer sues Playhouse Lounge, Burlington City strip club", Courier Post, March 25, 2019, *available at* https://bit.ly/2FyfNSx.  On April 9, 2019, Defendant filed its answer, which did not include a demand for arbitration. ECF Doc. No. 3.

On May 8, 2019, Defendant's counsel communicated with undersigned and attached a copy of a work contract signed by Plaintiff, which included an arbitration provision and a class waiver, and requested leave to amend to assert arbitration as an affirmative defense. Intending to oppose arbitration, Plaintiff initially opposed amendment; however, after concluding that some of Plaintiff's defenses to arbitration were fact-based, and judicial efficiencies could be achieved by presenting all of Plaintiff's defenses to arbitration at a single time, Plaintiff consented to the amendment and preserved all defenses to arbitration.

Likewise, at the initial scheduling conference, Defendant agreed to stay its motion to compel arbitration until the Court ruled on whether Plaintiff should be permitted to take arbitration-related discovery. Plaintiff filed said motion in June 2019.

On October 23, 2019, the Court denied Defendants' initial motion to compel arbitration without prejudice based on the parties' request to stay same pending the resolution of Plaintiff's motion for arbitration-related discovery. On January 22, 2020, Magistrate Judge Williams denied Plaintiff's motion to take arbitration-related discovery without prejudice. On September 30, 2020, Magistrate Judge Williams conducted a status conference. After that conference, Defendant refiled its motion to compel arbitration that afternoon. Plaintiff now files the instant response in opposition.

### III.   **LEGAL ARGUMENT**

### A. THE COURT SHOULD REFUSE TO ENFORCE THE ARBITRATION AGREEMENT BECAUSE IT IS UNENFORCEABLE PURSUANT TO GENERALLY APPLICABLE CONTRACT DEFENSES.

The parties do not dispute that the enforceability of the arbitration agreement at issue is governed by the Federal Arbitration Act ("FAA"). The FAA provides that arbitration agreements should be enforced "except on such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] While this provision ended the pre-FAA judicial "hostility" to enforcing arbitration agreements, *see Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018), it only placed such agreements on equal footing with other contracts. *Id.* Even under the FAA, the Court "cannot direct parties to arbitrate unless the agreement to arbitrate is valid." *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 542 (E.D. Pa. 2006). "Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [§ 2 of the FAA]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). As set forth below, the arbitration agreement is unenforceable under generally applicable New Jersey contract law because it is unconscionable and because it was secured as part of an illegal and unenforceable contract in support of prostitution.

---

[1] Prior to the enactment of the FAA, federal courts denied motions to compel arbitration premised on contract, rather holding that the proper remedy for a breach of an agreement to arbitrate was an action for damages. *See, e.g., Red Cross Lines v. Atlantic Fruit Co.,* 264 U.S. 109, 121 (1924) (Brandeis, J.). In *Red Cross Lines,* the Supreme Court noted that while a state was free to modify the remedies available to litigants in its own courts, a state could not legislate modifications to the remedies available in federal admiralty courts. *Id. at* 124. The pre-FAA federal courts recognized the long-standing common law rule that agreements to arbitrate were revocable at-will until an arbitration award was made, at which point they would be enforced. *See id.* at 121; *The Atlanten*, 252 U.S. 313, 315-316 (1920); *Hamilton v. Home Ins. Co.*, 137 U.S. 370, 385–86 (1890); *Hamilton v. Liverpool & London & Globe Ins. Co.,* 136 U.S. 242, 255, 10 S. Ct. 945, 949, 34 L. Ed. 419 (1890); *Toledo S.S. Co. v. Zenith Transp. Co.,* 184 F. 391 (6th Cir. 1911). The FAA changed this policy by providing federal courts both the power and the duty to order that arbitration agreements be enforced, and treated on an equal footing with other types of contracts.

**B. IT IS FOR THE COURT TO DECIDE WHETHER AN AGREEMENT TO ARBITRATE HAS BEEN MADE AND IS ENFORCEABLE.**

The Court should decide whether the arbitration agreement at issue in this case is valid. Defendant argues otherwise, but the Defendant is in error, making no reference to the Third Circuit decision issued on September 14, 2020, which sets forth the rubric for resolving what it referred to as the "mind-bending question that has been dubbed the queen of all threshold issues in arbitration law." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 392 (3d Cir. 2020) (*citing* David Horton, *Arbitration About Arbitration,* 70 Stan. L. Rev. 363, 370, 422 (2018)). The question: "Who decides—a court or an arbitrator—whether an agreement exists, when the putative agreement includes an arbitration provision empowering an arbitrator to decide whether an agreement exists?" *Id.* The Third Circuit's answer: "Questions about the 'making of the agreement to arbitrate' are for the courts to decide unless the parties have clearly and unmistakably referred those issues to arbitration in a written contract whose formation is not issue." *Id.* Where the "formation of the contract containing the relevant arbitration provision is at issue" the court should either deny arbitration outright or enjoin arbitration pending resolution of factual issues bearing on the valid formation of the contract. *Id.*

In *MZM Constr. Co.,* the Third Circuit uses the following terminology to keep straight the Russian nesting dolls at issue in determining who decides whether a matter can be arbitrated: (1) the Container Contract, which is the contract containing the arbitration clause as a whole; (2) The Arbitration Provision, i.e., the broader arbitration agreement, and (3) the Delegation Provision, i.e., the agreement to arbitrate arbitrability. 974 F.3d at 392. Here, the Container Contract is the two broader contracts signed by Plaintiff and set forth as the Exhibits A and B to the Declaration of John Kusmaul. ECF Doc. No. 28-2 at 3-13. The Arbitration Provision is set forth in Paragraph 21 of the second contract, set forth at ECF Doc. No. 28-2 at 11-12. Finally, the Delegation

7

Provision is contained in a single sentence of Paragraph 21(a) which provides that the "arbitrator shall have exclusive authority to resolve any disputes over the validity and/or enforceability of any part of this lease, including this arbitration section."

Here, Plaintiff specifically challenges the validity of the Arbitration Provision and the Delegation Provision as void for unconscionability, but she also argues that the Container Contract itself was never validly formed because, under New Jersey law, the contract was an illegal contract with a criminal purpose. Plaintiff has previously sought discovery to address that issue. Plaintiff has submitted evidence which demonstrates the criminal activities occurring on Defendant's premises and submits that same is sufficient to determine that the contract is illegal and is therefore void *ab initio.* To the extent that the Court determines that this evidence is not sufficient, Plaintiff would submit that the evidence at least establishes a colorable basis to take further discovery into this issue.

Accordingly, the Court can and should hear Plaintiffs' specific challenges to the validity and enforceability of the Arbitration Provision and the Delegation Provision, because whether or not an underlying agreement to arbitrate was made is a question for the Court to decide. *MZM Constr. Co., Inc.*, 974 F.3d at 400-401. However, under New Jersey law, where an agreement is even in part in violation of a penal statute, the entire contract is illegal and unenforceable. *See, e.g., Naimo v. La Fianza,* 146 N.J. Super. 362, 370 (N.J. Super. 1976). Because Plaintiff alleges and has submitted evidence showing that the container contract is an illegal contract to support and conceal prostitution, the Court should also determine that container agreement was never validly formed, and therefore, the arbitration agreements within the broader contract are likewise unenforceable.

**C.  THE ARBITRATION PROVISION AND DELEGATION PROVISION ARE UNENFORCEABLE BECAUSE THEY ARE PROCEDURAL AND SUBSTANTIVELY UNCONSCIONABLE UNDER NEW JERSEY LAW.**

As noted above, where a party specifically challenges an arbitration provision and delegation provision, the Court determines the outcome of that challenge because under the FAA, it is for the Court to decide whether an agreement to arbitrate has been made. 9 U.S.C. § 4; *MZM Constr. Co., Inc.*, 974 F.3d at 397-398. Here, because the Arbitration Provision and its Delegation Provision are specifically substantively and procedurally unconscionable, the Court should hold that they are unenforceable and deny Defendant's motion to compel arbitration. Specifically, these Provisions require Plaintiff to pay half the cost of the arbitration, pay Defendant's attorneys' fees in connection with Defendant's motion to compel arbitration, and, contrary to the provisions of the relevant statutes which severely limit the circumstances in which a defendant may recover attorneys' fees for defending against a claim asserting violations of federal and state wage and hour and civil rights laws, providing that should Plaintiff ultimately be unsuccessful in her claims, she will have to pay all of Defendant's attorneys' fees. *See* ECF Doc. No. 28-2 at 11-12, ¶ 21. Likewise, the Provision contains no guarantees that Plaintiff will be afforded a fair and neutral tribunal because it does not specify which arbitration system will be used and gives Defendant complete veto power over the arbitrator. *Id.*

These provisions fundamentally rewrite the basic incentives intendant upon litigation in ways which would be financially catastrophic to an individual in Plaintiff's position, potentially putting Plaintiff on the hook for at thousands and thousands of dollars of Defendant's attorney's fees. And, indeed, by providing that Plaintiff will be liable for attorneys' fees if she is unsuccessful in defeating Defendant's motion to compel arbitration, Defendant seeks to impose a substantial and punitive disincentive on Plaintiff even attempting to show that the agreement Defendant now seeks to use to divest this court of jurisdiction was illegally obtained. Together, these provisions

combine to preclude Plaintiff from having a fair opportunity to present her claim should arbitration proceed. Under *Gilmer v. Interstate/Johnson Lane Corp.,* arbitration cannot proceed unless the provisions of the arbitration agreement provide for that fair opportunity. 500 U.S. 20, 31, 111 S. Ct. 1647, 1654–55, 114 L. Ed. 2d 26 (1991). Likewise, under New Jersey law, contracts which are both procedurally and substantively unconscionable are unenforceable. *Rudbart v. N. Jersey Dist. Water Supply Com.*, 127 N.J. 344, 354 (1992).

Accordingly, as set forth in greater detail below, the Court should find that the Arbitration Provision and Delegation Provision are (a) procedurally and substantively unconscionable and (b) fail to contain sufficient provisions which allow Plaintiff to functionally present her claims and vindicate her rights, and, therefore, the two Provisions are unenforceable.

## 1. The Arbitration Provision and Delegation Provision are subject to the same conditions and restrictions and therefore may be considered together in determining their enforceability.

Plaintiffs argue that the Arbitration Provision and Delegation Provision each suffer independently from the same flaws: the Provisions are unconscionable under New Jersey law, and the Provisions set forth an arbitration process that is insufficient to afford Plaintiff an adequate and just tribunal. Because these deficiencies relate to the selection of the arbitrator and the cost-shifting rules imposed at every stage of the arbitration, Plaintiff's challenge applies with equal force to both the Arbitration Provision and the Delegation Provision.

## 2. The Two Provisions are substantively and procedurally unconscionable under New Jersey law as an adhesion contract tilted towards the employer with severe restrictions on Plaintiff's ability to vindicate her statutory claims.

### a) The Two Provisions are a Procedurally Unconscionable Adhesion Contract

The Court should find that the two provisions are unenforceable because they are substantively and procedurally unconscionable and therefore unenforceable. In New Jersey, an

agreement is procedurally unconscionable if it is a contract of adhesion. *Rudbart v. N. Jersey Dist. Water Supply Com.*, 127 N.J. 344, 354 (1992). A contract is one of adhesion if it was "a standardized mass contract." *Fairfield Leasing Corp. v. Techni-Graphics, Inc.*, 256 N.J. Super. 538, 539 (1992). A contract of adhesion is procedurally unconscionable because there is a "'gross inequality of bargaining position' between the parties…[the New Jersey Supreme Court] stated that no meaningful consent had been given…to the terms of the contract." *Vasquez v. Glassboro Service Assoc.*, 83 N.J. 86, 104 (1980) *quoting Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 391 (1960). In such a case of gross inequality of bargaining power, "the contract does not result from the consent of that party" and it is a contract of adhesion. *Id.*

In *Vazquez*, an employment agreement was offered to migrant workers. *Vasquez*, 83 N.J. at 103. These migrant workers did not have the opportunity to negotiate the agreement and the employer had all the bargaining power. *Id.* Since there was such gross inequality of bargaining power between migrant workers and their employer, the agreement was a standardized mass contract, and the migrant workers had no meaningful ability to negotiate the agreement, the migrant workers could not have actually consented to the agreement and it was a contract of adhesion. *Id.*

Here, the Arbitration Agreement is buried within a form contract provided to all of Defendant's dancers when they begin their employment. ECF Doc. No. 28-1 at ¶ 2; ECF Doc. No. 28-2 at ¶¶ 3-6. Defendant's owner John Kusmaul provided in his affidavit that signing these agreements are a prerequisite to working for Defendant. ECF Doc. No. 28-2 at ¶ 6. While Defendants' agents suggest that Plaintiff and other workers can have an attorney review these documents, they do not even attempt to suggest that Defendant is amenable to negotiating any of the terms of these documents or that any worker has ever successfully convinced Defendants to

11

modify the terms of these documents. Finally, the contracts do not contain any provision whereby the workers could opt-out of the arbitration agreement. Accordingly, the disparity in bargaining power coupled with the fact that the contract is presented on a take-it-or-leave-it-basis is sufficient to establish the procedural unconscionability of the agreement. *See Rudbart,* 127 N.J. at 354.

        b) <u>The Two Provisions are Substantively Unconscionable Because of the Severe Barriers on Litigation Imposed on Claimants by the Cost-Shifting Mechanisms and Defendant's control over the choice of an arbitrator.</u>

After determining that an agreement is a contract of adhesion, the court must "determine as a matter of policy whether to enforce the unilaterally-fixed terms of the [agreement]." *Rudbart*, 127 N.J. at 354.  The factors to consider in enforcing a contract of adhesion include "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Id.*

Here, as noted above, the relative bargaining positions tilt strongly in favor of Defendant. With respect to the subject matter of the arbitration agreements, the subject matter is the delegation of all legal disputes to an unidentified legal forum in which Plaintiff—an adult entertainer working mainly for tips—will be forced to split the **<u>substantial</u>** costs of paying the arbitrator with Defendant. Moreover, while the agreement calls for a neutral arbitrator and for the arbitration to be conducted pursuant to due process, the agreement does not designate an arbitration service or delimit the types of arbitrators who may be retained, limits the arbitrators to individuals with "experienced in the adult entertainment industry," and affords the Defendant an absolute veto over the choice of arbitrator. *See* ECF Doc. No. 28-2, Ex. B, at 11, ¶ 21(a). Moreover, the agreement provides that if any party is required to initiate proceedings to enforce the arbitration agreement, the prevailing party to such proceedings shall be entitled to all their costs, including arbitration fees. *Id.,* at 12, ¶ 21(c).

The New Jersey Supreme Court has held that fee-shifting provisions can deter a litigant from pursuing a claim such that an arbitration which could force an individual litigant to bear the risk of paying for the entire cost of the arbitration is substantively unconscionable. *Delta Funding Corp. v. Harris,* 189 N.J. 28, 42, 912 A.2d 104, 112 (2006). Here, by requiring to potentially pay half of the arbitration regardless of the outcome, and all of the Defendant's costs and fees (including attorney's fees and arbitration costs) if Defendant is the prevailing party, the cost shifting is so significant that it renders the arbitration agreement as a whole unconscionable. This is exacerbated by Defendant's veto of the choice of arbitrator, the subject-matter limitation on the arbitrator's expertise, and the lack of any other standards by which to pick an arbitrator, which Defendant may use to increase and drive up the costs of arbitration.

### D. THE TWO PROVISIONS ARE ALSO UNENFORCEABLE DUE TO A LACK OF MUTUAL ASSENT BECAUSE THERE ARE INSUFFICIENT CRITERIA RELATED TO THE SELECTION OF THE ARBITRATION VENUE AND ARBITRATOR.

Courts in New Jersey have also invalidated arbitration agreements for lack of mutual assent agreements which "do not clearly and consistently express the nature and locale of the arbitration forum itself." *See NAACP of Camden Cty. E. v. Foulke Mgmt. Corp.*, 421 N.J. Super. 404, 431, 24 A.3d 777, 794 (App. Div. 2011). Here, no forum is selected and no rules for selection are provided, other than "due process" and the right of either party to elect an arbitrator with experience in the adult entertainment industry. Indeed, the provision does not even require the arbitrator to be an attorney and could reasonably be read to mean that Defendant can insist on an arbitrator who has **worked** in the adult entertainment industry.

Finally, these offending provisions cannot be severed, because such is only permitted if "striking the unenforceable portions of an agreement leaves behind a clear residue that is

manifestly consistent with the 'central purpose' of the contracting parties, and this capable of enforcement." *Id.; Jacob v. Norris, McLaughlin & Marcus*, 128 N.J. 10, 33, 607 A.2d 142 (1992).

Here, Defendant has not once proposed an arbitrator to Plaintiff, or suggested that it would waive the cost-shifting rules, or agree to specific rules for the arbitration—and, accordingly, there is simply no reason to believe that either Defendant or Plaintiff reached a meeting of the minds over those issues sufficient to warrant severing the mass of offending provisions and then writing in wholly different provisions in order to afford the parties a fair—but likely costly—tribunal. Defendant has not indicated that it is willing to shoulder the entire costs of arbitration as it would be required to do under the AAA's employment rules, nor has it indicated that is willing to pay the arbitrator's fee of several hundred dollars per hour for a case which Plaintiff expects to involve substantial discovery, significant motion practice, and a multi-day hearing. And given the lack of any indication as to the forum or the arbitrator, it certainly cannot be said that Plaintiff—who was being offered the opportunity to either work solely for tips/dance fees or be paid minimum wage plus 75% of her tips—possessed the requisite mindset of agreeing to pay for arbitration before the AAA and be potentially responsible for half of those costs.

### E. THE CONTAINER AGREEMENT IS VOID *AB INITIO* DUE TO ILLEGALITY, AND THEREFORE, THE AGREEMENTS CONTAINED THEREIN CANNOT BE ENFORCED

The Court should also deny Defendant's motion to compel arbitration because the agreement at issue is illegal and void and unenforceable *ab initio* as a contract of prostitution.

Illegal contracts are unenforceable under New Jersey contract law. *McNutt v. Estate of McNutt,* 386 F. App'x 113, 116 (3d Cir. 2010). "No contract can be sustained if it is inconsistent with the public interest or detrimental to the common good." *Thompson v. City of Atl. City*, 190 N.J. 359, 382, 921 A.2d 427, 441 (2007). Contracts have been declared invalid because they violate statutes, promote crime, interfere with the administration of justice, encourage divorce, violate

public morality, or restrain trade. *See Vasquez v. Glassboro Serv. Ass'n, Inc*., 83 N.J. 86, 99, 415 A.2d 1156, 1162–63 (1980).

### 3. <u>Defendant was required to take affirmative steps to prevent prostitution on its premises under New Jersey law and the Burlington zoning ordinances.</u>

Both prostitution and the promotion of prostitution are prohibited under New Jersey criminal law. N.J.S.A. 2C:34-1. Prostitution is defined as sexual activity with another person in exchange for something of economic value, or the offer or acceptance of an offer to engage in sexual activity in exchange for something of economic value. N.J.S.A. 2C:34-1(a)(1). Sexual activity includes both sexual intercourse, masturbation, and the touching of the genitals, buttocks, or females' breasts. N.J.S.A. 2C:34-1(a)(2). A house of prostitution is any place where prostitution or promotion of prostitution is regularly carried on by one person under the control, management, or supervision of another. N.J.S.A. 2C:34-1(a)(3). Promoting prostitution is, *inter alia,* owning, controlling, managing, or supervising or otherwise keeping a house of prostitution. N.J.S.A. 2C:34-1(a)(4)(a). However, it is also defined as "knowingly leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or promotion of prostitution, or failure to make a reasonable effort to abate such use by ejecting the tenant, notifying law enforcement authorities, or other legally available means." N.J.S.A. 2C:34-1(a)(4)(g). The offense of promoting prostitution is either a crime of the third degree (typically), or of the fourth degree. N.J.S.A. 2C:34-1(b)(2), (c)(4).

Likewise, Burlington City's local ordinances prohibits operating adult establishments/massage parlors as houses of prostitution. City of Burlington, Municipal Ordinances, Part II, Ch. 66, § 66-15(B). Likewise, any adult establishment has to be configured in a manner that will prevent prostitution and sexual assault by allowing all patrons to be monitored by at least one **employee** of the sexually oriented business, and it is the duty of the business and

its agents to monitor patrons and ensure they do not engage in any activities which violate applicable law. *Id.,* § 66-3(f)(1).

### 4. Plaintiff has alleged that Defendant encouraged prostitution on its premises in her complaint, and evidence exists which corroborates Plaintiff's allegations.

Plaintiffs' complaint alleges that she was pressured to book private "champagne rooms" where she would be expected to engage in sexual acts with patrons. Complaint, ECF Doc. No. 1 at ¶ 45. An internet search referencing Defendant reveals several reports of prostitution activity on the premises which corroborate Plaintiff's complaint. The website Peter Tips is a blog which provides reports about adult entertainment clubs. On August 12, 2009, the blog posted a review of Playhouse Lounge reporting that dancers at the club would solicit sexual activity from patrons. *See* Peters Tips: Playhouse Lounge (Burlington, NJ), Aug. 12, 2009, *available at* http://petertips.blogspot.com/2009/08/playhouse-lounge-burlington-nj.html, PDF attached as Exhibit 1. In response to this post, on April 1, 2010, a commenter holding themselves out as an agent of Defendant requested that the blog post a link to the website and email of Defendant. *Id.* Such **endorsement** of the review arguably constitutes an admission by silence.

Further reports of prostitution are available behind the paywall of a website called "The Ultimate Strip Club List" which lists reviews and reports of visits to Defendant's premises and experiences which occurred within. *See* The Ultimate Strip Club List, Playhouse Lounge, available at https://www.tuscl.net/listing.php?id=1160. These reports and reviews demonstrate that Defendant encouraged and promoted prostitution by the dancers.

Given that the solicitation of prostitution is itself a crime in New Jersey, these reviews from TUSCL are exceptions to the hearsay rule and admissible evidence as statements against interest. Fed. R. Evid. 804(b)(3). Moreover, because this issue is for the Court to determine as the factfinder,

it is not bound by the hearsay rules and can make its own determination related to the weight to afford these reports.

By way of example only, a review from a patron on November 12, 2018, reports that in the VIP room, the patron apparently engaged in a sexual encounter he refers to as "the PH handshake I've heard about." *See* Nov. 12 TUSCL Review, attached as Exhibit 2. A review from November 20, 2018, reports that during a private dance, he received the "usual playhouse special." *See* Nov. 20 TUSCL Review, attached as Exhibit 3. In a comment to this review, another patron states that one of the dancers "doesn't give the standard Playhouse dances that everyone is accustomed to." *Id.* A review from a patron from November 26 states that during a private dance, the dancer "had her hand in my pants," and states "I was lucky to last 3 dances!" He then confirms that the "dances were $30 each; I made it an even $100 for her effort." *See* Nov. 26 TUSCL Review, attached as Exhibit 4. **<u>The implication of this review is significant because</u>** it demonstrates that Defendant was sharing substantially in the proceeds of this prostitution, given that Defendant would take a portion of each $30/dance fee. Another review from this same day states that Playhouse is "NJ's most reliable good time," describes the dancers as "friendly," states "your money goes a long way here," and that the "rooms are more private than just about anywhere else." *See* Update, Nov. 26 TUSCL Review – 2, attached as Exhibit 5.

A review from December 9, 2018, titled "Crystal ball play," describes a patron's private dance in which he describes—in significant detail and with nakedly transparent code words—a sexual encounter with a dancer in which he received oral sex in exchange for money. *See* Dec. 9 TUSCL Review, attached as Exhibit 6. The comments proceed to discuss which dancers provide oral sex and the cost for same. *Id.*

A review from July 5, 2018 provides a history lesson into Defendant's operations. The patron states that 9 years ago, the place was raided, with 6 dancers arrested for prostitution, and the township was ready to "close the place down. *See* July 5 TUSCL Review, attached as Exhibit 7. The patron describes how in the wake of the raid, there were no "more extras," "doors were cut off at the bottoms," and there were no more "barside handshakes,"  and "cameras were now watched and improved." *Id.* But the patron states the club "slowly things loosened up, to where we are now," and states "when guys complaint about no fs or bj, they must understand that's what got the place raided." *Id.* Thus, while this patron suggests that Defendant has become more circumspect, and that there may be some acts of prostitution at the club that are generally off-limits, this report corroborates that prostitution (limited perhaps to genital touching) during the time in which Plaintiff was working for Defendant was an open secret and common occurrence. *Id.*

A series of review from July 2018 reports that prostitution on the premises is occurring during the relevant time frame of Plaintiff's work. *See* July 2018 Reviews, Exhibit 8, at p. 3 ("most seemed to be spending their time making money (I'm told with high mileage) in the back"), p. 4 (best time for "extra special experience" "between noon and 5 pm"); p. 5 ("mileage in the private dancers is very high"), p. 8 ("I think the warnings about the dud girls are the best. So once they stop getting business they can either get with the program or go find another club"); p. 12 ("I told her I wanted a TF and COB, and she said ok, for 20 dollar tip"), p. 20 (manual genital stimulation of patron), p. 22-23 (digital penetration, defining a "PH finish" as manual genital stimulation of patron).

A review posted during this litigation reported that Defendant was still engaged in promoting prostitution as of June 2019, though it had taken efforts to be less brazen and more

careful in allowing such activities. The patron titled his review "A New Era in PH History Begins." *See* June 21, 2019 Review, attached as Exhibit 9. The patron states that "it was remarkably slow for a Thursday afternoon, which in the past has been Primetime." He goes on: "Here's the deal…the baby wipes are gone from the dance rooms…and are probably never coming back. The wipes are just too much of a red flag for a business under scrutiny. If you have never been to the PH…this is probably not a good time to go. You likely won't get the PH handshake that this place is known for…because the girls have to go under the assumption that any newbies…is some there to investigate what's going on at the club." *Id.*

But despite the fact that Defendant no longer offers prostitution services to newcomers, it apparently has allowed prostitution to continue if the person is a known past patron: "Here's the good news…if you have been here in the past and the dancer recognizes you…you can have the same great time you've had in the past…with maybe a couple minor adjustments." *Id.* He then goes on to state that he received a "PH handshake" as in the past, but that him and the dancer had to move into a "different position away from the cameras … for the grand finale finish." *Id.* The dancer explained that management had send her home early one day recently "because of a 'hand motion' caught on video…**which is now not allowed.**" *Id.*

The review could not be clearer: Prostitution used to be aided, abetted, allowed, and encouraged by Defendant's management. Management kept baby wipes in the dance rooms. In light of this lawsuit, they have tightened up appearances, but still **__allow__** prostitution to continue, not least by having cameras installed in ways which create blindspots in the Champagne Room.

Defendant's own motion and declarations allow the court to conclude that since at least 2014, the period described by these patrons, the dancers engaging in prostitution had signed the agreements at issue. *See* ECF Doc. No. 28-2 at ¶¶ 2-6. Indeed, by encouraging the dancers to

identify as independent contractors, Defendant likely would attempt to use that work status as an attempted defense to criminal charges of allowing prostitution. Accordingly, the agreements at issue are intrinsically intertwined with Defendant's illegal operations and are illegal contracts under New Jersey law.  And because Defendant could not enter into an illegal written contract with Plaintiff, it cannot now use that contract to attempt to push Plaintiff's statutory claims into an arbitral forum.

### 5.  The illegality of the purpose of the contract also directly and specifically invalids the Two Arbitration Provisions.

As argued above, Plaintiff maintains that the illegality of the Container Contract invalidates the Arbitration Agreement as well. However, to the extent that *Prima Paint Corp.* and *Rent-A-Center* would require that this challenge be directly specifically at the Arbitration Provision and the Delegation Provision, this challenge does directly implicate those provisions.

Here, both the arbitration provision and the delegation provision remove from public court the possibility that occurred here—that an aggrieved employee would reveal the illegal conduct Defendant was demanding she participate in as part of her employment. Defendant cannot require either participants or victims of such illegal activities to follow contracts related to such activities. A drug dealer cannot require his couriers to sign bilateral arbitration agreements related to disputes about their illegal activities such that a dispute about same—say a claim brought under the Federal Forced Labor Statute—would be shunted into an arbitral forum. Likewise, that same drug dealer could not require the courier to agree to delegate the issue of arbitrability of disputes related to this drug activity into an arbitral forum. It is black-letter law—followed by New Jersey and every other common law jurisdiction in the United States—that an individual is precluded from enforcing a contract with an illegal purpose or which is against public policy.

20

Accordingly, whether the illegality of Defendant's prostitution activities either invalidates the entire container contract such as to take down the two arbitration provisions, or whether Plaintiff has to specifically challenge those provisions as agreements to arbitrate criminal contracts, the arbitration agreement cannot be enforced and the Court should deny Defendants' motion.

### F. ARBITRATION-RELATED DISCOVERY IS PERMITTED WHEN EVIDENCE CALLS THE ENFORCEABILITY OF THE ARBITRATION AGREEMENT INTO QUESTION.

To the extent that the Court is not convinced that Defendant was violating New Jersey's anti-prostitution laws at the time of Plaintiff's employment, Plaintiff should be permitted to take discovery to establish same. When considering a motion to compel arbitration ... [a district court] should" employ "the standard used ... in resolving summary judgment motions pursuant to [Rule 56 of the Federal Rules of Civil Procedure]." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). A party contesting whether an arbitration agreement has been made is entitled to have that issue presented to a jury. *Id.* Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA favors resolving the motion to compel arbitration under a motion to dismiss standard without delay for discovery. *Id.* at 773-774.

However, where the arbitrability is not apparent on the face of the complaint, the motion to compel "must be denied pending further development of the factual record." *Id.* Moreover, even where arbitrability may be facially appropriate based on the complaint, but the non-movant has come forward with enough evidence to place the question at issue, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard. *Id.* Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.*

Discovery is also afforded for other issues related to arbitration enforcement, such as allowing a non-movant to show that arbitration would subject to the non-movant to prohibitive costs. *See, e.g., Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). This is because without some discovery related to the estimated costs of arbitration and the claimant's ability to pay, it is not clear how the parties could brief or the court could decide whether costs of arbitration made litigation prohibitively expensive such to render the arbitration provision a bar to the vindication of Plaintiff's statutory rights. *Id; Blair v. Scott Specialty Gases,* 283 F.3d 595, 608–09 (3d Cir.2002).

Likewise, and at issue here, pre-arbitration discovery has been allowed to determine when an arbitration clause is unconscionable. *See, Parilla v. IAP Worldwide Servs., V.I., Inc.,* 368 F.3d 269, 284 (3d Cir.2004). Pre-arbitration discovery is also permitted to determine whether a valid agreement to arbitrate was formed. *See SBRMCOA, LLC v. Bayside Resort, Inc.,* 707 F.3d 267, 272–73 (3d Cir.2013). "Given that the burden of proving a generally applicable contract defense lies with the party challenging the contract provision, the need for discovery in these types of situations is evident." *Guidotti,* 716 F.3d at 774, fn. 5. "Indeed, any time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted." *Id.*

Here, Defendant has implicitly conceded that arbitration cannot be ordered based solely on the face of the complaint under a motion to dismiss standard, because it has attached a separate arbitration agreement and two declarations. Plaintiff has provided additional evidence showing that Defendant was using these agreements to secure dancers it would coerce and use as part of its operation of a house of prostitution in violation of New Jersey and local law. Plaintiff submits that this evidence is sufficient to warrant denying Defendant's motion. However, if the Court does not believe Plaintiff has met her burden to deny Defendant's motion, Plaintiff seeks in the alternative

arbitration-related discovery related both to the contract's unconscionability and to Defendant's illegal activities.

### G. THE COURT SHOULD STRIKE THE FEE-SHIFTING PROVISIONS AS UNCONSCIONABLE.

Finally, regardless of whether the Court finds either the Arbitration Provision or Delegation Provision unenforceable, the Court should issue an order finding that the fee-shifting provisions which would impose arbitration costs and attorneys' fees on Plaintiff are unconscionable and cannot be enforced. Plaintiff is an individual without significant means, who has retained undersigned counsel on a contingency basis.

Plaintiff has raised colorable defenses to arbitration and seeks to bring this matter as a collective action in order to vindicate the rights of others similarly situated and share the costs of litigation which might well be prohibitive if she is forced to litigate alone. In such an instance, the threat that Defendant would be awarded attorneys' fees for successfully forcing Plaintiff into arbitration was nearly sufficient to dissuade Plaintiff from challenging the arbitration provision once Defendant brought its existence to her attention after this litigation began. Even a fee award in the thousands of dollars would be financially catastrophic to Plaintiff. Despite this, Plaintiff has objected to Defendant's attempt to push her claim of wage theft and sexual harassment into a private forum and out of public scrutiny. She should not be punished for doing so, and regardless of whether or not Plaintiff is required to arbitrate her claim, she asks that the Court rule that Defendant cannot enforce the fee shifting provisions contained in Paragraph 21 against her.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should permit Plaintiff to take arbitration-related discovery in support of her opposition to Defendants' motion to compel arbitration.

Respectfully Submitted,

23

/s *Joshua S. Boyette*
Joshua S. Boyette
Swartz Swidler, LLC
1101 Kings Hwy N., Ste 402
Cherry Hill, NJ 08034
Tel: (856) 685-7420
Fax: (856) 685-7417
Email: jboyette@swartz-legal.com

DATED: October 19, 2020

**CERTIFICATE OF SERVICE**

I, Joshua Boyette, hereby certify that a copy of Plaintiff's motion, memorandum of law, and

exhibits, were electronically filed with the Court and electronically served, via ECF, on October 19,

2020, and were also served via electronic mail on:

Mark W. Catanzaro
Law Offices of Mark W. Catanzaro
21 Grant Street
Mount Holly, NJ  08060
mark@catanzarolaw.com
lisa@catanzarolaw.com

/s Joshua S. Boyette
Joshua S. Boyette
Swartz Swidler, LLC

25